UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>JAMES LANCASTER, )<br>)<br>Defendant. ) | Cause No. 1:21-cr-00367-TWP-MJD |

**SENTENCING MEMORANDUM OF THE UNITED STATES**

The United States of America, by counsel, respectfully submits the following for the Court's consideration in the sentencing of the Defendant, James Lancaster. Lancaster stole hundreds of checks from the mail over the course of several months. He then exchanged them for cash as part of a mail theft and bank fraud conspiracy along with Jordan McPhearson and Lavaris Yarbrough. *See* 1:22-cr-00019-SEB-MG. On December 13, 2021, a two-count Information was filed charging Lancaster with one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344(2) and one count of Theft of Mail in violation of 18 U.S.C. § 1708. Dkt. 15. On January 24, 2022, Lancaster pleaded guilty to both counts. Dkt. 32.

To reflect the seriousness of these crimes and provide just punishment for the offenses, the United States respectfully requests that Lancaster receive a sentence in the middle of guidelines, around 45 months and be ordered to pay $88,376.12 in restitution.

1

# BACKGROUND

In early 2021, James Lancaster was a manager of the New Augusta Branch Post Office in Indianapolis, Indiana. Sometime in the spring of 2021, he met Jordan McPhearson. McPhearson encouraged him to steal checks from the mail and provide them to McPhearson. Shortly after their meeting, Lancaster began looking through the incoming mail and stealing pieces of mail that appeared to contain a business check. When he had collected several checks, he would arrange to meet with McPhearson. McPhearson would then travel from his residence in the Chicago area and meet with Lancaster in Indianapolis. Lancaster would provide McPhearson with the checks he stole; McPhearson would provide Lancaster with cash.

With these stolen checks in hand, McPhearson used a variety of techniques to exchange them for money. For example, sometimes McPhearson would advertise on Facebook that he had checks he could deposit into someone's account and that they would make money if they let him:





If he was able to find a willing participant, McPhearson would then convince that person to send him their banking information. McPhearson would replace the name on the check with their name, deposit the money in their account, and withdraw it later, leaving some money for the participant, but keeping most of it for himself.

Other times, McPhearson wouldn't bother with depositing the checks himself and instead would sell the checks directly to others. For example, in one Facebook conversation, McPhearson sent this picture:



In this conversation, McPhearson said "I have over 100 [checks] . . .  I sell checks n***** . . . Real checks like mf sending ppl money mf . . . my plug front me over 100 at a time.

Cash him out after I use them." Lavaris Yarbrough got checks directly from McPhearson in this manner. Yarbrough would then fraudulently negotiate them as well.

Finally, McPhearson occasionally took the banking information found at the bottom of all checks to create his own counterfeit checks. In total, McPhearson created 254 counterfeit checks using this method worth around $563,526.46.

In total, Lancaster stole approximately 272 checks or money orders from the New Augusta Post Office. The value of these stolen checks was $1,735,454.74. Fifty-nine different Indianapolis businesses had their checks or money orders stolen from the mail by Lancaster during the relevant time. Including the counterfeit checks McPhearson created, the intended loss of the conspiracy was around $2,298.981.20.

## THE UNITED STATE'S RECOMMENDED SENTENCE

The United States respectfully submits that Lancaster should receive a sentence of around 45 months of imprisonment on each count, to be served concurrently. He should also be ordered to pay $88,376.12 in restitution.

### A. Term of Imprisonment

The United States submits that a sentence in the middle of the guidelines is appropriate because that sentence would balance the need for the sentence imposed to reflect the seriousness of the offense with the history and characteristics of the defendant.

First, this was a very serious offense. The New August Post Office is located off 86th Street and it serviced a busy commercial district in which dozens of businesses are located. For several months in the spring and summer of 2021, these businesses could not reliably mail their checks. Fifty-Nine of the businesses had their checks stolen. Many of them had more than one

check stolen. Once the scope of the theft was realized, these businesses had to stop using their local post office to mail checks—too many were being stolen. In total, several businesses had thousands of dollars taken from the accounts and issued to the wrong payee. This was nothing short of stealing from these businesses.

Aside from the value of the stolen checks, all of the businesses serviced by the New August Post Office experienced another loss: the loss of their employee's time. These businesses' employees spent substantial time sorting out what happened to their checks and why they did not arrive at their intended destination. These employees had to then stop payment on stolen checks, track the checks that were already sent, and issue new payments. And once they fixed that problem, they had to spend additional time and money finding ways to submit payment that did not involve their local post office. As one victim put it, this process required "[a] complete halt of any financial transactions." Dkt. 45 at 38. For these businesses, the entire process was "very time consuming and stressful." *Id.*

In total, Lancaster's actions affected hundreds of people, involved thousands of dollars in actual loss, and the loss of hundreds of hours in employee time. A sentence on the low end of the guidelines or below would not adequately reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense under 18 U.S.C. § 3553(a).

Nevertheless, a high-end sentence also is not appropriate after considering Lancaster's history and characteristics. Lancaster has a minimal criminal history, and this appears to have been his first serious criminal activity. Lancaster did not think through how disruptive his actions would be to the Indianapolis business community. Rather, he saw what he thought was an easy way to make some quick cash.

When interviewed, he said he frequently provided letters to McPhearson without first opening them to confirm they were checks. In addition, he had no knowledge that McPhearson was using the information on these checks to create counterfeit checks. Finally, Lancaster's ability to perpetrate this conspiracy rested entirely on his ability to steal checks from the mail. He was able to do this because he was a postal employee. But Lancaster is no longer a postal employee, and he never will be again. Therefore, a high-end sentence is not necessary to deter Lancaster from re-offending. His termination and conviction will take care of this.

In sum, Lancaster was not the mastermind of this conspiracy; that was McPhearson. But he was an essential part of the conspiracy because he was the sole supplier of stolen checks. Therefore, a sentence in the middle of the guidelines is appropriate in order to adequately reflect his role in the conspiracy.

### B. Restitution

Neither Lancaster nor McPhearson know how many checks Lancaster stole from the New Augusta Post Office. Nor did they record how much money they made from the sale or fraudulent negotiation of these checks.

Instead, all information about the scope of this conspiracy comes from information provided by the victims themselves. When a business serviced by the New Augusta Post Office noticed that a check it placed in the mail was stolen, that business contacted a law enforcement agency to report the theft. Eventually, all of the reported thefts were funneled to the agent for this case, Special Agent Brian Clancy. He then recorded the theft in a spreadsheet. Through his investigation, he discovered that 272 checks were reported stolen from the New August Post Office while Lancaster was working there. That is a conservative estimate. Since this number is

based entirely on businesses self-reporting the theft, it is possible that Lancaster stole more than 272 checks.

      For the checks that were reported stolen, not all of them were successfully negotiated. Many times, the victim business cancelled the stolen checks before they could be negotiated. Other times, the business used software that prevented negotiation anytime a check was attempted to be negotiated by someone other than the intended payee. Still other times, the banks themselves noticed that the checks seemed suspicious (frequently the names of the payee were changed sloppily), and the banks refused to provide payment for the checks. In total, therefore, far less than $2,298,981.20 was negotiated on these stolen checks. Most of these stolen checks were probably never successfully cashed.

      In order to determine which of the many businesses and banks that were victims of this offense suffered an actual loss, the U.S. Attorney's Office sent letters to all of the victim banks and businesses. In these letters, the recipients were asked to report any money they lost because they had one or more checks stolen from the New Augusta Post Office. Their responses were filed at Docket 45 and 46. In total, these businesses reported an actual loss of $88,376.12. Lancaster should owe that amount jointly and severally with the other members of the conspiracy, Jordan McPhearson and Lavaris Yarbrough.

## CONCLUSION

The United States respectfully submits that Lancaster should receive a sentence of around 45 months of imprisonment and should be ordered to pay $88,376.12 in restitution.

Respectfully submitted,

ZACHARY A. MYERS
United States Attorney

By: /s/ *Adam Eakman*
Adam Eakman
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2023, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice and service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

By: *s/ Adam Eakman*
Adam Eakman
Assistant United States Attorney
United States Attorney's Office
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
Telephone: 317-226-6333
Email:   adam.eakman@usdoj.gov